
PHILLIP A. TALBERT
United States Attorney
SHELLEY D. WEGER
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile:  (916) 554-2900

Attorneys for Plaintiff
United States of America

**FILED**

Jul 02, 2024

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> EUAN DAVID MACGREGOR <br>  fka DAVID JOSEPH BEAN, <br><br> Defendant. | CASE NO. 2:24-cr-0207 JAM <br><br> 18 U.S.C. § 1343 – Wire Fraud |

I N F O R M A T I O N

COUNT ONE: [18 U.S.C. § 1343 – Wire Fraud]

The United States Attorney charges:

EUAN DAVID MACGREGOR
fka DAVID JOSEPH BEAN,

defendant herein, as follows:

**I.    PARTIES AND ENTITIES**

At all relevant times,

1. Defendant EUAN DAVID MACGREGOR was known as DAVID JOSEPH BEAN and lived in Benicia, California, in the State and Eastern District of California.

2. Company 1 was a professional services corporation located South San Francisco,

California, that provided medical laboratory directorship and pathology services to hospitals and clinics and operated an independent lab. MACGREGOR began working at Company 1 in or about 2007, as the laboratory operations manager. By no later than approximately 2012, MACGREGOR had assumed the role of Chief Administrative Officer ("CAO"). In this role, he reported directly to the President of Company 1. As CAO, MACGREGOR was responsible for Company 1's day-to-day operations, including but not limited to, overseeing all of Company 1's employees that were not pathologists, and providing financial and accounting oversight. MACGREGOR was responsible for presenting financial reports to Company 1's management and board members. The financial reports listed, in relevant part, monetary balances that were owed to Company 1 for work it had performed, and monies that had been paid to Company 1 for work it had performed. MACGREGOR remained employed with Company 1 as the CAO until he resigned in or about August 2020.

3. Essential Business Services Corp., referred to by MACGREGOR and Company 1 as EBS, was registered with the California Secretary of State as a corporation between February 2014 through February 16, 2016, when a certificate of dissolution was filed. According to a Statement of Information filed in or about April 2014, EBS was engaged in the business of "accounting, HR, [and] information technology" with a principal place of business at MACGREGOR's home address in Benicia, California. The Statement of Information listed MACGREGOR as both the Chief Executive Officer and Chief Financial Officer and MAGREGOR's wife, D.B., as the Secretary. MACGREGOR held a bank account, account ending in 3905, in the name of Essential Business Services Corp at Navy Federal Credit Union between at least November 2014 and February 2021. In November 2014, the bank statements listed MACGREGOR's home address in Benicia, California, and beginning in February 2014, the address changed to PO Box 1702, Benicia, California.

4. Peninsula Pathology, LLC registered with the California Secretary of State as a limited liability company on or about January 27, 2015, and utilized MACGREGOR's home address in the State and Eastern District of California as its business address. After filing Articles of Organization with the California Secretary of State, no additional filings were made, and Peninsula Pathology was suspended by the California Secretary of State on or about November 1, 2018. In or about February 2015, MACGREGOR opened a bank account at Navy Federal Credit Union, account ending in 9673, in the

name Peninsula Pathology.  In or about March 2018, MACGREGOR opened a bank account at Bank of America, account ending in 3990, in the name Peninsula Pathology LLC.  MACGREGOR was the sole account holder and signatory on each of these bank accounts.

## II. SCHEME TO DEFRAUD

5. Beginning no later than November 2014, and continuing through in or about July 2020, in the State and Eastern District of California and elsewhere, MACGREGOR knowingly devised, intended to devise, participated in, and executed a material scheme and artifice to defraud and to obtain money by means of materially false and fraudulent pretenses, representations, promises, and half-truths and the concealment of material facts.

6. The purpose of the scheme and artifice to defraud was for MACGREGOR to enrich himself unlawfully by taking money from Company 1 that he was not entitled to received. MACGREGOR did this in two ways.  First, he took checks made payable to Company 1, diverted them, and deposited them into one of the two bank accounts MACGREGOR held in the name of Peninsula Pathology, LLC.  Second, MACGREGOR made false representations to Company 1 and Company 1's President that caused Company 1 to issue payments to EBS, MACGREGOR's business entity, for work that MACGREGOR falsely represented had been outsourced to a third-party bookkeeping company.

7. Between in or about February 2015, and in or about July 2020, MACGREGOR fraudulently diverted and converted to his own use and benefit over $2.9 million in checks made payable to Company 1.  In addition, between in or about November 2014 and in or about January 2020, MACGREGOR fraudulently obtained approximately $276,250.00 in payments from Company 1 to Essential Business Services, Corp. that he used for his personal use and benefit.

## III. MANNER AND MEANS

8. In furtherance of the scheme and artifice to defraud, MACGREGOR employed, among others, the following manner and means:

### Peninsula Pathology, LLC

9. MACGREGOR created a company named Peninsula Pathology, LLC, a name that was similar to the name of his employer, Company 1, for the purpose of diverting checks from Company 1 to himself.  MACGREGOR opened two bank accounts in the name Peninsula Pathology, LLC, that he

INFORMATION                                       3

1  controlled, one at Navy Federal Credit Union and the other at Bank of America.

2        10.     In his role as CAO, MACGREGOR took checks made payable to Company 1 that should have been deposited into Company 1's bank account and deposited them into one of the two Peninsula Pathology bank accounts that he controlled.  Between approximately February 2015 and April 2018, MACGREGOR took checks made payable to Company 1 and deposited them into the Peninsula Pathology bank account that he controlled at Navy Federal Credit Union, ending in account number 9673.  Between approximately April 2018 and July 2020, MACGREGOR took checks made payable to Company 1 and deposited them into the Peninsula Pathology LLC bank account that he controlled at Bank of America, ending in account number 3990.

      11.     MACGREGOR presented false financial reports to Company 1's board members and shareholders that listed false and incorrect amounts of income and revenue to conceal MACGREGOR's diversion of money to himself.  In some instances, the financial reports falsely listed certain payments as income that had been received by Company 1 for work it performed.  In reality, Company 1 did not receive these monies because MACGREGOR did not deposit the checks made payable to Company 1 into Company 1's bank account.  Instead, MACGREGOR deposited the checks into one of the Peninsula Pathology, LLC bank accounts that MACGREGOR controlled.  The false statements on the financial reports were material because Company 1 would not have permitted MACGREGOR to divert the money or deposit the money into bank accounts that he controlled.

      12.     For example, MACGREGOR presented a "2019 Revenue" spreadsheet to Company 1's shareholders that indicated under the month of November, that Company 1 had received a $118,106.00 payment for work Company 1 performed.  In reality, MACGREGOR deposited this check into the Peninsula Pathology bank account he controlled at Bank of America.

      13.     MACGREGOR used the money he took for his personal use and benefit.

### Essential Business Services, Corp

      14.     During the scheme, MACGREGOR also obtained monies by making material false representations to the President of Company 1 about hiring an outside bookkeeping company, EBS, to handle Company 1's bookkeeping, in part, to free up some of MACGREGOR's time.

      15.     MACGREGOR took various steps to conceal the fact that EBS was MACGREGOR's

company that MACGREGOR was using to obtain additional money from Company 1. MACGREGOR represented to the President of Company 1 that he had implemented a selection process that included interviewing bookkeeping companies and visiting their offices. MACGREGOR told the President of Company 1 that his point of contact at EBS was an individual named Tim. In reality, EBS did not have employees other than MACGREGOR and his wife, and did not have an employee named Tim. MACGREGOR also told the President of Company 1 that EBS was located in Concord, California, and was owned by a Certified Public Accountant. In reality, EBS was incorporated in Benicia, California, and was owned, operated, and controlled by MACGREGOR, who was not a Certified Public Accountant. Any work that was performed was not outsourced to a third-party bookkeeping service as MACGREGOR represented but done by MACGREGOR.

16. MACGREGOR's false representations about outsourcing Company 1's bookkeeping to EBS and the work EBS purportedly performed were material because they had a tendency to influence, and were capable of influencing Company 1 to issue payments to EBS. MACGREGOR's false representations to Company 1, including its President, caused Company 1 to pay EBS on average between $4,500 and $5,000 per month, during the period of at least November 2014 through January 2020, for work and services that MACGREGOR falsely purported EBS performed.

17. Company 1 paid EBS via checks made payable to "EBS Corp." These checks were generally deposited into the EBS bank account at Navy Federal Credit Union that MACGREGOR controlled, ending in account number 3905. One check was deposited into the Peninsula Pathology, LLC bank account at Bank of America that MACGREGOR controlled, ending in account number 3990. MACGREGOR then used these monies for his personal use and benefit.

### IV. USE OF INTERSTATE WIRES

18. On or about the date set forth below, in the State and Eastern District of California and elsewhere, for the purposes of executing the aforementioned scheme and artifice to defraud, and attempting to do so, MACGREGOR, as more specifically charged below, knowingly transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce, any writings, signs, signals, pictures, and sounds:

///

INFORMATION 5

| Count | Approximate Date | Check Details | Wire Description |
|---|---|---|---|
| 1 | January 6, 2020 | Check No. 1282787 Payable to Company 1 in the amount of $118,106.32, deposited in Benicia, California. | Wire signals associated with the deposit of check number 1282787, into Bank of America account ending in 3990. |

All in violation of Title 18, United States Code Section 1343.

Dated: 7/2/2024

PHILLIP A. TALBERT
United States Attorney

By:   /s/ Shelley D. Weger
SHELLEY D. WEGER
Assistant United States Attorney

## United States v. Euan David MacGregor fka David Joseph Bean
**Penalties for Information**

### COUNT 1:

VIOLATION:  18 U.S.C. § 1343 - Wire Fraud

PENALTIES:  Up to 20 years in prison; or
Fine of up to $250,000, or twice the gain or gross loss, whichever is greater; or both fine and imprisonment;
Supervised release of up to 3 years;
Restitution

SPECIAL ASSESSMENT: $100 (mandatory)